**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wesley Royal,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-01377-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of his applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 14), and Plaintiff's reply (Doc. 15), as well as the Administrative Record (Docs. 9-11, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.    Procedural History

Plaintiff filed applications for benefits on March 31, 2019, in both instances alleging disability beginning on September 1, 2017. (AR at 32.) However, Plaintiff later amended the onset date to March 2, 2018. (*Id.*) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels. (*Id.*) On April 12, 2022, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 32-53.) The Appeals Council later denied review. (*Id.* at 1-4.)

…

II.     The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.     The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the amended alleged onset date and that Plaintiff had the following severe impairments: "major depressive disorder; social anxiety disorder; generalized anxiety disorder; agoraphobia; and panic disorder." (AR at 34-35.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 36-38.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. He can understand, remember, and apply detailed instructions, but not complex instructions. He can perform predictable tasks. He can work in an environment free of fast-paced production requirements. He can be exposed to occasional workplace changes. He can have occasional interaction with the general public, co-workers, and supervisors.

(*Id.* at 38.)

As part of this RFC determination, the ALJ conducted an extensive evaluation of Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record. As discussed below, the claimant's treatment record is inconsistent with his testimony. Furthermore, the claimant's claims of debilitated functioning are inconsistent with contemporaneous reports of actual functioning." (*Id.* at 39-47.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) S. Fair, Ph.D., state agency psychological consultant ("partially persuasive"); (2) E. Salk, Ph.D., state agency psychological consultant ("partially persuasive"); (3) Ms. Barnett, Adelante Health Care ("partially persuasive"); (4) Dr. Nguyen, consultative psychological examiner ("not persuasive"); and (5) Dr. Higgins,

---

[1] The ALJ also determined that Plaintiff had the non-severe impairments of "heart palpitations; tachycardia; gastroesophageal reflux disease (GERD); colon polyp; hemorrhoids; obesity; attention deficit hyperactivity disorder (ADHD); neurocognitive disorder; expressive language disorder; and alcohol use." (AR at 35.)

neuropsychological evaluator ("not persuasive"). (*Id.* at 48-51.) The ALJ also considered third-party statements from Plaintiff's mother (Sandra Royal) and father (Loyd Royal) but concluded that neither statement "convince[s] the undersigned that the residual functional capacity is less limiting than warranted by the evidence discussed in this decision." (*Id.* at 47-48, 50.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was incapable of performing his past work as an order puller, he was capable of performing other jobs that exist in significant numbers in the national economy, including (1) office cleaner, (2) price marker, and (3) floor cleaner. (*Id.* at 51-52.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 52-53.)

IV. Discussion

Plaintiff raises two issues: (1) whether the RFC "fail[s] to account for a limitation that was established by a physician whose opinion was found persuasive by the ALJ"; and (2) whether the ALJ erred by "credit[ing] the severity of Plaintiff's panic disorder and symptoms of panic attacks, but fail[ing] to establish an RFC that captured Royal's limitations caused by these symptoms." (Doc. 12 at 1.) As a remedy, Plaintiff seeks a remand "for the payment of benefits, or alternatively, remand with instructions for the ALJ to properly evaluate the medical opinion evidence, Plaintiff's testimony, the RFC, and the Step Five determination." (*Id.* at 24.)

      A.    **RFC Formulation—Social Interaction Limitation**

           1.    Standard of Review

"The ALJ assesses a claimant's RFC based on all the relevant evidence in the case record. The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the claimant, family, friends, and other people. The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal

observations, if appropriate. In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.

It is the ALJ's province to translate and incorporate medical findings into an RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). But "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). When the ALJ employs a VE to ascertain whether work exists at step five, the ALJ's hypothetical questions to that expert must set forth all of the limitations supported by the record. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

2. <u>The ALJ's RFC Determination And VE Hypotheticals</u>

At the initial level of administrative review, Dr. Fair opined that Plaintiff was "[n]ot significantly limited" in various functional categories, including the "ability to carry out very short and simple instructions" and the "ability to work in coordination with or in proximity to others without being distracted by them." (AR at 96-98.) Dr. Fair also opined that Plaintiff had "no" social interaction limitations. (*Id.* at 97.)

At the reconsideration level, another state consultant, Dr. Salk, disagreed with Dr. Fair's opinions in part. (*Id.* at 123-25.) More specifically, Dr. Salk opined that Plaintiff would have a "moderate[]" limitation regarding his "ability to work in coordination with or in proximity to others without being distracted by them." (*Id.* at 123.) Unlike Dr. Fair, Dr. Salk also opined that Plaintiff had social interaction limitations, consisting of "moderate[]" limitations in his "ability to interact appropriately with the public," "ability to accept instructions and respond appropriately to criticism from supervisors," and "ability

to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.* at 124.) However, Dr. Salk opined that Plaintiff would not be limited in his "ability to ask simple questions or request assistance" or in his "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (*Id.*) Finally, Dr. Salk provided the following narrative regarding Plaintiff's social interaction capacities and/or limitations: "The claimant would be best suited to work with minimal social demands where interaction with others is superficial and occasional." (*Id.*)

The ALJ deemed the opinions of Drs. Fair and Salk "partially persuasive." (*Id.* at 48-49.) On the one hand, the ALJ found that both doctors' opinions were only "somewhat consistent with the overall medial evidence of record." (*Id.*) On the other hand, the ALJ found that both doctors' opinions were "consistent with [Plaintiff] regularly demonstrating a normal mood and affect during evaluations and treatment visits" and "consistent with [Plaintiff's] demonstrated activities like . . . socializing with a few friends." (*Id.*) The ALJ also clarified that, as to both doctors, "the undersigned included additional restrictions in the [RFC] to account for updated medical evidence and [Plaintiff's] testimony during the hearing, especially with respect to his social interactions." (*Id.*) To that end, the ALJ included the following social-interaction limitation in the RFC: "He can have occasional interaction with the general public, co-workers, and supervisors." (*Id.* at 38.)

During Plaintiff's hearing, the ALJ asked the VE whether jobs that exist in significant numbers in the national economy would be available for an individual of Plaintiff's age and education who can have "only occasional interaction with the general public, with co-workers and supervisors." (*Id.* at 1084-85.) The VE identified three such jobs: (1) office cleaner, (2) price marker, and (3) floor cleaner. (*Id.* at 1085-86.) The VE also clarified that all three jobs "[t]ypically have no public contact and don't . . . demand that the worker collaborate with either supervisors or coworkers." (*Id.* at 1086.) Later, in response to questioning by Plaintiff's counsel, the VE confirmed that none of the cited jobs would require interaction with the public. (*Id.* at 1087.) The VE also clarified that "interaction" involves more than mere contact. (*Id.* at 1088.)

          3.         <u>The Parties' Arguments</u>

Plaintiff does not challenge the ALJ's decision to partially credit the opinions of the state agency consultants, Drs. Fair and Salk. Instead, Plaintiff argues that the ALJ's RFC determination conflicts with the social-interaction limitations expressed by Dr. Salk. (Doc. 12 at 12-17.)[2] According to Plaintiff, although Dr. Salk "determined Plaintiff was restricted to 'minimal social demands where interaction with others is superficial and occasional'" and the ALJ concluded that "additional limitations" were necessary "to capture the entirety of Plaintiff's social interaction deficiencies," the ALJ then failed to add any such limitations to the RFC and adopted less-restrictive limitations than those recommended by Dr. Salk: "In contrast to the ALJ's statement, no additional social interaction restrictions were established in the RFC. The ALJ limited Plaintiff to 'occasional' interaction with others, which is identical to just a portion of the social limitations expressed by Dr. Salk. Also, the ALJ improperly disregarded Dr. Salk's opinion that [Plaintiff] be permitted occasional interaction only if the interaction was 'superficial' in nature or content." (*Id.* at 5-8.) Plaintiff continues: "The ALJ provided no rationale for his conclusion regarding [Plaintiff's] limitation involving interactions with others, and the ALJ's determination was significantly different than the RFC found by Dr. Salk. Such a difference required the ALJ to give reasons why the RFC was changed, what factors or evidence resulted in reaching the conclusion for a different RFC, and why the ALJ rejected the opinion of Dr. Salk in this regard. The ALJ failed to provide explanations regarding these issues to the detriment of Plaintiff in error." (*Id.* at 10.) Plaintiff identifies *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), as a case requiring reversal under these circumstances. (*Id.* at 12-13.) Plaintiff also contends that the ALJ's error infected the step-five analysis, because "[n]o evidence demonstrates the jobs found suitable at Step Five remain consistent with an RFC that precluded more than superficial interaction with others." (*Id.* at 11.) More specifically, Plaintiff first notes that although the VE identified

---

[2] Plaintiff clarifies that he believes the ALJ "correctly disagreed" with Dr. Fair's determination that he would have no social-interaction limitations. (Doc. 12 at 5.)

1  "office cleaner" as one of the jobs that a person with Plaintiff's RFC could perform, the
2  DOT code the VE provided for this position (DOT 323.687-014) actually corresponds with
3  the job of "cleaner-housekeeper or maid," which "involves direct dealing or interaction
4  with customers." (Doc. 12 at 13.) Next, Plaintiff contends that although the VE identified
5  "price marker" as another job that a person with Plaintiff's RFC could perform, that job
6  requires Reasoning Level Two, which involves the ability to follow "detailed" oral
7  instructions, and argues that a person limited to superficial interactions with others is
8  perform that function. (*Id.* at 14.) Finally, Plaintiff argues that although the VE identified
9  "floor cleaner" as the final job that a person with Plaintiff's RFC could perform, "[t]he
10 problem presented is that no evidence demonstrates this position would remain suitable
11 when considering the superficial interaction limitation." (*Id.* at 14-15.)

12 The Commissioner offers two arguments in response. (Doc. 14 at 8-12.) First, the
13 Commissioner argues that Dr. Salk did not *opine* that Plaintiff must be limited to jobs
14 involving superficial interaction with others—rather, Dr. Salk simply observed, in the
15 narrative section of the opinion form, that Plaintiff "would be best suited" to work
16 involving occasional and superficial interaction with others. (*Id.* at 8-9.) According to the
17 Commissioner, "[i]dentifying the job for which a claimant is 'best suited' is not the same
18 thing as opining that the claimant would be unable to perform any other job whose demands
19 deviate, in any way, from the demands of the best-case-scenario job." (*Id.*) The
20 Commissioner also contends that the actual opinions Dr. Salk offered regarding Plaintiff's
21 social-interaction limitations—specifically, that Plaintiff would have only "moderate"
22 limitations in his ability to interact appropriately with the public, accept instructions and
23 respond appropriately to supervisory criticism, and get along with coworkers or peers
24 without distracting them or exhibiting behavioral extremes—demonstrate that, "by Dr.
25 Salk's own terms," Plaintiff retained some ability to interact with the public, supervisors,
26 and coworkers," and thus "it was rational for the ALJ to conclude that this part of Dr. Salk's
27 [opinion] was consistent with 'occasional interaction with the general public, co-workers,
28 and supervisors.'" (*Id.* at 9.) The Commissioner thus likens this case to *Rodriguez v.*

*Comm'r of Soc. Sec. Admin.*, 2023 WL 4486639 (D. Ariz. 2023), which involved similar facts. (*Id.* at 11.) Second, and alternatively, the Commissioner argues that any error in the ALJ's failure to include a "superficial interaction" limitation in the RFC was harmless because all three jobs identified by the VE require only superficial interaction with others. (*Id.* at 10-11.)

In reply, Plaintiff argues that the Commissioner's first argument is internally inconsistent because "[i]f Dr. Salk never established a restriction for 'superficial' interaction, as suggested by the Commissioner, then likewise, he never established an 'occasional' interaction limitation. Consistent with Defendant's assertion, the ALJ was not required to find any social interaction limitations. And though the ALJ was not obligated to find socially-based restrictions, the fact is that he did, and when reaching this conclusion, relied on Dr. Salk's findings. Herein lies the ALJ's error. . . . The ALJ's decision arbitrarily selected the quantitative limitation of occasional interaction to be included in the RFC, yet inconsistently, disregarded the qualitative restriction of superficial interaction without explanation." (Doc. 15 at 2-3.) Plaintiff also contends that *Rodriguez* is inconsistent with *Leach*. (*Id.* at 3.)

        4.        <u>Analysis</u>

Plaintiff has failed to establish that the ALJ committed harmful error when formulating the social-interaction limitation in the RFC. The linchpin of Plaintiff's argument is that Dr. Salk opined that Plaintiff needed to be limited to jobs involving "superficial" interaction with others—and, thus, the ALJ's decision to accept Dr. Salk's opinions on this topic meant the ALJ was required to include such a limitation in the RFC. The problem with this argument is that Dr. Salk's only mention of a superficial-interaction limitation appeared in the portion of the assessment form where Dr. Salk was asked to describe, "in narrative form," Plaintiff's social interaction capacities and/or limitations. (AR at 124.) In response, Dr. Salk wrote: "[Plaintiff] *would be best suited* to work with minimal social demands where interaction with others is superficial and occasional." (*Id.*, emphasis added.) But as this Court noted in *Rodriguez*, which involved a nearly identical

issue, "[i]dentifying the job for which a claimant is 'best suited' is not the same thing as opining that the claimant would be unable to perform any other job whose demands deviate, in any way, from the demands of the best-case-scenario job." *Rodriguez*, 2023 WL 4486639 at *4. *Cf. Rounds*, 807 F.3d at 1006 ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.").

This understanding is consistent with the other portions of Dr. Salk's assessment form. Dr. Salk assigned Plaintiff only "moderate" limitations in his ability to interact appropriately with the public, his ability to accept instructions and respond appropriately to supervisory criticism, and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR at 124.) A "moderate" limitation still amounts to a "fair" ability—*i.e.*, between a "slightly" limited and "seriously" limited ability—to perform a task. 20 C.F.R., Pt. 404, Subpart P, App. 1, § 12.00(F)(2). Thus, according to Dr. Salk, Plaintiff retained some ability to interact with the public, accept instructions and respond to supervisory criticism, and get along with coworkers and peers. Dr. Salk also opined there was "[n]o evidence of limitation" regarding Plaintiff's ability to ask simple questions or request assistance and maintain socially appropriate behavior. (AR at 124.) Notably, the ALJ emphasized that these opined-to limitations were "consistent with [Plaintiff's] demonstrated activities," which included "socializing with a few friends." (*Id.* at 49.) These details underscore why it was rational for the ALJ to construe Dr. Salk's opinions as allowing for more-than-superficial interaction with others. Thus, it was rational for the ALJ to conclude that the social-interaction limitation set forth in the RFC—*i.e.*, that Plaintiff "can have occasional interaction with the general public, co-workers, and supervisors" (AR at 38)—was consistent with, and indeed even more restrictive than, the social-interaction limitations to which Dr. Salk opined.[3] And as the Ninth Circuit has

---

[3] There is no merit to the internal-inconsistency argument set forth in Plaintiff's reply. Because the ALJ could have permissibly construed the narrative portion of Dr. Salk's assessment form as merely identifying Plaintiff's optimal job situation, the ALJ was not required based on that portion of the form to limit Plaintiff to "occasional" *or* "superficial" interaction with others. Nevertheless, the ALJ included an "occasional" interaction limitation in the RFC—an approach consistent with the ALJ's statement that "the undersigned included additional restrictions in the [RFC]" beyond those identified by Drs. Fair and Salk "to account for updated medical evidence and [Plaintiff's] testimony during

- 10 -

repeatedly emphasized, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

*Leach* is not to the contrary. In that case, there was no dispute over whether the ALJ properly formulated the RFC. Instead, the ALJ erred by failing to include, in the step-five hypothetical to the VE, some of the limitations that ALJ had included in the RFC. *Leach*, 70 F.4th at 1256 ("In assessing Claimant's residual functional capacity, the ALJ determined that Claimant is limited to following 'short, simple instructions.' The ALJ's question to the vocational expert asked only whether jobs existed for a person who can carry out 'simple job instructions.' The ALJ plainly omitted the adjective 'short,' thus inviting the vocational expert to identify jobs that have longer-than-short, simple instructions. . . . [W]e cannot say this error was inconsequential."). Here, in contrast, the ALJ's hypothetical to the VE mirrored the RFC—both limited Plaintiff to "occasional" interaction with the general public, co-workers, and supervisors. (AR at 38, 1084-85.)[4]

### B.     **Evaluation Of Panic Disorder**

#### 1.     The Parties' Arguments

Plaintiff's second argument is that although the ALJ accepted, at step two of the disability analysis, that his panic disorder qualified as a "severe impairment . . . [that] significantly restricted [his] ability to perform basic work activities," "the ALJ essentially ignored this impairment" during later steps of the analysis, as "inexplicably the RFC contains no discernible relationship to this impairment." (Doc. 12 at 18.) In a related vein, Plaintiff argues that "notably absent" from the ALJ's assessment of the credibility of his symptom testimony "is any medical evidence cited by the ALJ that undermined [Plaintiff's] description of the severity and frequency of panic attacks." (*Id.* at 19-20.) Plaintiff adds: "[T]he ALJ provided no explanation with specificity as to whether he accepted or rejected [Plaintiff's] specific statements regarding panic attacks." (*Id.* at 21.)

---

the hearing, especially with respect to his social interactions." (AR at 48-49.)

[4]     Given this determination, it is unnecessary to reach the Commissioner's alternative argument of harmless error.

Also: "The ALJ . . . failed to reconcile why no part of the RFC addressed panic attacks despite these significant panic episodes being the precise reason why he is disabled." (*Id.* at 24.)

In response, the Commissioner broadly argues that the ALJ permissibly discounted Plaintiff's symptom testimony based on its inconsistency with the objective medical evidence, its inconsistency with Plaintiff's activities, and Plaintiff's inconsistent efforts to pursue treatment. (Doc. 14 at 3-7.) Next, turning specifically to Plaintiff's panic-disorder arguments, the Commissioner argues that "Plaintiff's assertion of error is flawed because an ALJ does not need to perform a line-by-line exegesis of a claimant's testimony or draft dissertations when denying benefits." (*Id.* at 12, cleaned up). The Commissioner also notes that the RFC was consistent with the opinions of the state agency consultants. (*Id.*)

In reply, Plaintiff reiterates his contentions that "the ALJ improperly ignored [his] panic attacks" when formulating the RFC and that this approach was inconsistent with the ALJ's step-two severity finding. (Doc. 15 at 3-4.)

2. Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's panic disorder. The ALJ's decision contains an extensive, unusually detailed explanation as to why the ALJ deemed Plaintiff's symptom testimony less than fully credible. (AR at 38-47.) To provide just one example, the ALJ noted that although Plaintiff "alleged during the hearing that he gets frustrated and loses focus after engaging in a hobby for only 10 minutes," "the evidence shows that [Plaintiff] is able to enjoy hobbies like playing videogames, welding, and woodworking" and "stay[s] busy during the day by working on projects (presumably woodworking or welding projects)." (AR at 47.) Plaintiff makes no effort to show that the ALJ's overall credibility assessment was erroneous (and has thus forfeited any such challenge).

Instead, Plaintiff's argument seems to be that even if the ALJ permissibly discounted his testimony as to *certain* symptoms and impairments, the ALJ was still required to go through his testimony as to every *other* alleged symptom and impairment

(including his testimony regarding his panic disorder) and provide specific, clear and convincing reasons for discounting the credibility of that testimony. On this point, Plaintiff is mistaken. *Young v. Saul*, 845 F. App'x 518, 519-20 (9th Cir. 2021) ("As an initial matter, we reject Young's argument that, by failing expressly to mention Young's assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it. . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony, such as the need to take off weeks at a time from work.") (citing *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020)); *Dorsey v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6058505, *9 n.4 (D. Ariz. 2023) ("To the extent Plaintiff's position is that the ALJ needed to go through each one of his claimed symptoms and provide specific, clear and convincing reasons for rejecting his testimony regarding that symptom, any such argument lacks merit. Plaintiff cites no case endorsing such a rule, which would be inconsistent with the principle that an ALJ may utilize 'ordinary techniques of credibility evaluation' when evaluating a claimant's symptom testimony. A determination that a witness has testified untruthfully on one topic ordinarily entitles a factfinder to disregard other portions of that witness's testimony.") (citations omitted).

Finally, there is no merit to Plaintiff's seeming argument that the ALJ's failure to include any panic disorder-related limitations in the RFC was inconsistent with the ALJ's step-two determination that Plaintiff's panic disorder qualified as a "severe" impairment. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (citation omitted).

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of June, 2024.

_____
Dominic W. Lanza
United States District Judge

- 14 -